896 F.Supp. 1115 (1995)
Thomas L. CURTIS and Linda M. Curtis, Plaintiffs,
v.
SECOR BANK, Defendant.
Civ. A. No. 94-D-1081-N.
United States District Court, M.D. Alabama, Northern Division.
June 19, 1995.
*1116 Lawrence S. Coogler, Tuscaloosa, AL, C. Knox McLaney, Montgomery, AL, Charles Baird, Miami Beach, FL, J. Eric Arend, Chicago, IL, for plaintiffs.
Robert D. Eckinger, Henry E. Simpson, Birmingham, AL, for defendant.

MEMORANDUM OPINION
DE MENT, District Judge.
Before the court is defendant Secor Bank's ("Secor Bank") motion for summary judgment filed May 1, 1995, to which plaintiffs Thomas L. Curtis and Linda M. Curtis ("plaintiffs") did not respond.[1] Secor Bank contemporaneously filed a brief and tendered evidence in support of its motion. Also before the court is the plaintiffs' request for class certification.
In this action, the plaintiffs contend that Secor Bank violated the Truth-in-Lending Act, 15 U.S.C. §§ 1601 et seq., and its implementing Regulation Z, 12 C.F.R. § 226. Specifically, the plaintiffs assert that a $15 overnight delivery fee imposed on the plaintiffs is a finance charge that Secor Bank failed to disclose prior to a mortgage refinancing closing. After careful consideration of the relevant case law and the record as a whole, the court finds that Secor Bank's motion is due to be granted and that the plaintiffs' request for class certification is due to be denied as moot.

JURISDICTION
Based upon 28 U.S.C. § 1331 (federal question jurisdiction), the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

SUMMARY JUDGMENT STANDARD
On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:
[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential *1117 element of the nonmoving party's case necessarily renders all other facts immaterial.
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
In further elaboration on the summary judgment standard, the court has said that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is `genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248, 106 S.Ct. at 2510. See Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir.1989).

FINDINGS OF FACT
Viewing the evidence in the light most favorable to the plaintiffs, the court considers the following facts controlling in this case:
In 1990, the plaintiffs obtained an FHA mortgage from Secor Bank in order to finance the purchase of a residence in Tuscaloosa, Alabama. T. Curtis Dep. at 45. Shortly thereafter, Secor Bank assigned the note and mortgage to BancBoston Mortgage Corporation ("BancBoston") in Jacksonville, Florida. Id. at 42.
On November 22, 1993, the plaintiffs refinanced through Secor Bank the mortgage on their residence. The closing took place at the Tuscaloosa, Alabama law offices of Rosen, Cook, Sledge, Davis, Carroll & Jones ("law firm"). The attorneys of this law firm are approved to act as Secor Bank's closing agents for mortgage transactions. B. Beaird's Dep. at 18-19. Joseph Cade ("Cade"), an associate with the law firm, acted as the closing agent. Cade's Aff. at 1. No representative of Secor Bank was present at the closing. T. Curtis' Dep. at 64; Cade's Aff. at 3.
In connection with the loan transaction, the plaintiffs received from Secor Bank a Truth-in-Lending Act Disclosure Statement ("Disclosure Statement") and a HUD-1 settlement agreement ("HUD-1"). Pl.'s Compl. at ¶ 8, Ex.s A & B attached thereto. At the closing, the plaintiffs signed the Disclosure Statement and the HUD-1.
As mandated by federal law, the Disclosure Statement divulges, among other things, the loan origination fee, the amount financed, the finance charge, annual percentage rate and total number of payments. The HUD-1 itemizes all charges in connection with the loan and indicates whether the borrower or lender paid the charge. Line 1111 on page 2 of the HUD-1 lists a $15 fee for a "[F]ederal [E]xpress payoff" paid from the plaintiffs' loan proceeds. The Federal Express charge represents the fee incurred by the law firm for sending funds to satisfy the plaintiffs' preexisting mortgage on their residence, which was to become the security for the refinancing loan.
Cade recommended overnight delivery, because if BancBoston did not receive the payoff by the first day of the next month, the plaintiffs would have owed an additional $700.00 (the interest payment for one full month).[2] Cade's Aff. at 2. At the loan closing, Cade "thoroughly reviewed" with the plaintiffs the terms of the HUD-1. Id. at 3; see also T. Curtis' Dep. at 65-67. Cade further attests that he specifically told the plaintiffs that the law firm would assess a $15 charge against the plaintiffs to send the payoff via an overnight carrier. Cade's Aff. at 3.
According to Cade, Secor Bank does not require its closing agents to send payoffs for preexisting mortgages via overnight delivery. While Secor Bank provides general instructions for closing a mortgage transaction, the instructions do not specify the manner or *1118 method for satisfying prior liens. Rather, payoff decisions are left to the discretion and preference of the closing agent and the borrower. Id. at 1-2. Finally, the evidence reveals that the law firm, not Secor Bank, imposed the $15 charge on the plaintiffs and that the law firm paid the Federal Express fee from its operating account.
Believing that Secor Bank's business practice of excluding certain Federal Express fees as a finance charge violates the uniform disclosure requirements of the Truth-in-Lending Act and Regulation Z, the plaintiffs commenced this case on August 18, 1994 as a proposed class action. In Count I of the complaint, the plaintiffs seek relief for violations of the TILA and request rescission of the loan, actual damages, statutory damages, attorney fees and "further relief as the Court deems appropriate." Pl.s' Compl. at ¶ 29. In Count II, the plaintiffs assert a claim for restitution on the basis that Secor Bank wrongfully obtained from the plaintiffs the $15 Federal Express fee. Id. at ¶¶ 30-31.

DISCUSSION

I. Secor Bank's Motion for Summary Judgment

This action arises under the Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., and its implementing Regulation Z, 12 C.F.R. § 226. The TILA is a federal consumer protection act designed "to promote the informed use and awareness of the cost of credit by consumers." Rodash v. AIB Mortgage Co., 16 F.3d 1142, 1144 (11th Cir. 1994) (citation omitted). The TILA regulates primarily by providing uniform disclosure requirements and standard definitions of credit terms.
Particularly pertinent to this litigation are those sections of the TILA and Regulation Z that require a lender to disclose the "finance charge" in consumer credit transactions. 15 U.S.C. § 1638(a); 12 C.F.R. § 226.4(a). A "finance charge" is defined as a "charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a).
The sole issue is whether Secor Bank is liable under the TILA and Regulation Z for failing to disclose as a "finance charge" a $15 Federal Express fee incurred by a third-party closing agent for mailing a payoff check to a prior lienholder. Resolution of this issue requires a careful analysis of the Eleventh Circuit's controversial decision in Rodash, supra,[3] and application of the definition of a "finance charge."
The plaintiffs contend that their circumstances are analogous to those in Rodash. In Rodash, the Eleventh Circuit imposed liability under the TILA for a lender's failure to disclose a $22 Federal Express charge incurred for delivering loan proceeds to payoff a prior lienholder and for returning the original loan documents to the lender's assignee. There, the lender, not a third party, assessed the challenged fee against the borrower, and the issue hinged upon whether the Federal Express fee directly imposed by the lender to satisfy the borrower's prior mortgage constituted a finance charge.
The court agrees with Secor Bank that when a third party imposes a fee, versus a lender, the holding in Rodash is inapplicable. As explained in Cowen v. Bank United of Texas F.S.B., No. Civ.A. 94-C3838, 1995 WL 38978 (N.D.Ill. Jan. 25, 1995), this factual distinction is crucial. In Cowen, the borrowers sued Bank United of Texas FSB ("Bank United") for failure to list a $14 courier fee as part of a "finance charge." A mortgage broker of Bank United hired an independent title company to perform a title search on the borrower's residence and to handle the closing of the borrower's mortgage refinancing transaction.
The court rejected the borrower's argument that under Rodash a federal express fee always is a "finance charge" subject to disclosure under the TILA. The court stated that unlike Rodash, the closing agent (not the lender) mailed the payoff and collected *1119 the fee, thus, rendering the inquiry in Rodash inappropriate. The Cowen court framed the issue as follows: "Did Bank United require [the closing agent] to use an overnight courier service to send the payoff checks to the prior mortgages?" Id. at *2. The court explained that when a third party charges a fee, the court must examine the facts surrounding the fee because
[i]f the creditor requires a certain service to be performed and knows that a third party will perform the service and impose a separate charge on the consumer for performing the required service, the creditor has a duty to disclose this known cost to the consumer; the creditor indirectly "imposes" the cost by requiring the service. In contrast, however, is a situation where a third party charges a consumer for performing services that are neither needed nor required by the creditor. In this situation, the cost is not imposed by the creditor in any form....
Id. at *5 (quoting Hickey v. Great Western Mortgage Corp., No. Civ.A. No. 94-C3638, slip. op. at 11, 1995 WL 21633 (N.D.Ill. Jan. 3, 1995)).
Moreover, on April 1, 1995, the Board of Governors of the Federal Reserve System ("Board")[4] revised its official staff commentary to clarify when fees charged by third parties may be imputed to a lender and, thus, considered a finance charge:
4. Charges by Settlement Agents. Charges imposed on the consumer by a settlement agent (such as an attorney, escrow agent, or title company) are finance charges only if the creditor requires the particular services for which the settlement agent is charging the borrower and the charge for those services is not otherwise excluded from the finance charge. For example, a fee for courier service charged by a settlement agent to send a document to the title company or some other party is not a finance charge, provided that the creditor has not required the use of a courier or retained the charge.
60 Fed.Reg. 16771, 16777 (1995) (quoted in Hickey v. Great Western Mortgage Corp., No. Civ.A. 94-C3638, 1995 WL 317095, at *2 (N.D.Ill. May 23, 1995)).[5]
In light of the Board's revised commentary, which is binding unless "demonstrably irrational,"[6] and the decisions in Rodash and Cowen, the court finds that the narrow inquiry is whether Secor Bank required the law firm to send the payoff documents by overnight delivery or retained the charge. The unopposed affidavit of Cade affirmatively states that Secor Bank does not require its closing agents to send payoff checks by overnight delivery. In addition, the instructions given to the law firm by Secor Bank do not mandate the use of an overnight courier service.
The evidence further shows that Secor Bank had no involvement in the method or manner of satisfaction of the prior lien. Rather, Secor Bank's only requirement was that it receive a first mortgage lien on the plaintiffs' residence. The method of satisfying any prior lien was solely between the plaintiffs and the closing agent. For example, if a local financial institution had held the prior mortgage, there would have been no need for a shipping/courier fee. From aught *1120 that appears, the aforementioned matters were completely outside the control or knowledge of Secor Bank.
In addition, the plaintiff's admit that a payoff before the first of the month avoids the accrual of $700 in interest. Hence, overnight delivery inured to their benefit. Moreover, there is no evidence that Secor Bank retained the charge: The law firm, acting as the closing agent, assessed the $15 Federal Express fee against the plaintiffs, orchestrated the delivery of the payoff check and paid Federal Express with money in its operating account.
Finally, the plaintiffs have not submitted an affidavit or deposition testimony or any other evidence to raise a genuine issue of material fact as to whether Secor Bank required overnight delivery of payoff funds or retained the $15 federal express fee. The plaintiffs appear to be under the impression that in federal court, they merely can "rest on [the] pleadings" and survive summary judgment. This is clearly a misstatement of Rule 56 of the Federal Rules of Civil Procedure, which provides in part that
[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
Fed.R.Civ.P. 56. Accordingly and for the foregoing reasons, the court finds that Secor Bank's motion for summary judgment is due to be granted.[7]

II. Plaintiffs' Request for Class Certification

Granting summary judgment in favor of Secor Bank necessarily renders moot the plaintiffs' request for class certification. Even if class certification were before the court, Congress has declared a moratorium until October 1, 1995 on TILA class action lawsuits based upon errors in disclosure practices relating to mortgage refinancing. See 141 Cong.Rec. 5614 (April 24, 1995).
In fact, the purpose of the moratorium is to provide lenders temporary relief until Congress can rewrite the TILA to correct the enormous potential for liability ignited by the Rodash decision. Specifically, Congress is concerned that Rodash has opened the door for massive rescissions of loans based upon technical violations of the TILA's disclosure requirements. The moratorium legislation does not, however, prohibit individual consumers, such as the plaintiffs, from seeking redress under the TILA.

CONCLUSION
For the foregoing reasons, the court finds that Secor Bank's motion for summary judgment is due to be granted and that the plaintiffs' request for class certification is due to be denied as moot.
NOTES
[1] The court's order entered May 4, 1995 required the plaintiffs to reply to the motion for summary judgement on or before May 18, 1995. While the plaintiffs have not submitted any evidence, as required under Rule 56 of the Federal Rules of Civil Procedure, the plaintiffs did file memorandum briefs of law in opposition to Secor Bank's motion to dismiss, which the court has considered in ruling on the motion for summary judgment. Incidentally, the court denied Secor Bank's motion to dismiss in a stamped order dated June 13, 1995.
[2] The FHA loan instructions provided by BancBoston provide that

BancBoston Mortgage Corporation will accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received.
Note: It is to your advantage to arrange closings so that prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.
Cade's Aff. at 2.
[3] The decision in Rodash prompted Congress to issue a moratorium on certain class action lawsuits filed under TILA, discussed infra.
[4] Congress established the Board to promulgate regulations under the TILA. 15 U.S.C. § 1604. The Board has issued Regulation Z, which governs disclosure requirements in credit transactions. 12 C.F.R. § 226.1.
[5] The Board explained the basis for the revision as follows:

Creditors had expressed concern about some charges imposed by loan-closing agents being imputed to the creditor. Some had indicated that despite the fact that they require the use of a closing agent (and in limited ways the agent acts on behalf of the creditor), in the modern mortgage lending environment, creditors do not have control over certain fees that may be charged to consumers by these entities, particularly where there is no affiliation between the creditor and the third party, as is often the case. To address this concern, the proposed revision to comment 4(a)-3 provided by example that if a particular fee imposed by a settlement agent is not required or retained by the creditor, the fee is not a finance charge, even though the creditor requires use of a third party.
60 Fed.Reg. at 16772 (quoted in Hickey, 1995 WL 317095, at *4).
[6] See Johnson v. Fleet Fin., Inc., 4 F.3d 946, 949 (11th Cir.1993).
[7] In finding that the Federal Express charge is not a "finance charge" under the TILA, the court need not address the plaintiff's claim for restitution in Count II of the complaint.